BAKER, JUDGE:
Claimants, Janet L. Gibson Schafstall and Carol L. Holcomb, seek awards from the Division of Highways for personal injuries which they sustained in an accident which took place on December 8, 1987, on U.S. Route 19 at the intersection of West Virginia secondary 41/1 in Summersville, West Virginia. This particular intersection is commonly referred to as the “Irish Corner. ” These claims ere heard by the Court on the issue of liability only.
From the evidence adduced at the hearings on September 21 and 23, 1992, it appears that the claimants were guests in a vehicle, a 1980 Datsun, operated by Tommy Marling, traveling southerly on Route 19; that the claimants and Mrs. Marling were on their way to work from Clay County to the Bright of America plant located in Summersville; that Ms. Marling brought the vehicle to a stop or near stop to make a left hand turn onto a road known as Irish Corner; that Mrs. Marling proceeded to drive through the intersection to turn left just as a 1982 GMC truck, operated by James Whitlow and owned by Fansteel, Inc., was traveling northerly on Route 19; and that the two vehicles collided with the point of impact being the passenger side of the Datsun and the front of the GMC truck. Route 19 is a four-lane highway in certain areas, but at this intersection it is a two-lane highway.
The claimants contend that the respondent is negligent for failing to place proper traffic signals at the intersection which was a hazard intersection and that the respondent had sufficient knowledge prior to the accident of the hazardous condition that would have warranted, justified, and required the use of a traffic signal and warning signs similar to ones found at other intersections in Summersville.
*207 Respondent avers that the direct and proximate cause of the accident was the negligence of the driver of the car in which claimants were passengers and that respondent has not breached any duty of care owed to the claimants.
Both claimants testified that they remembered very little about the details of the accident. Mrs. Holcomb was in the front passenger seat and remembers seeing headlights and a turning signal on the truck before the point of impact. Mrs. Gibson Schafstall, who was in a coma for three months after the accident, remembers none of the facts of the circumstances of the accident.
The testimony of the driver of the GMC truck, James Whitlow, established that he was operating a truck loaded with steel at about 20 to 25 miles per hour. He had the flashing lights of the truck operating as he was driving slowly up a grade as he approached the intersection of Route 19. It was approximately 7:00 a.m. He observed a small car which cut in front of him and he was unable to stop the truck which then struck the car broadside with contact occurring at the right front bumper of the truck. He was sure that all of the flashers on his truck were operating properly at the time of the accident.
An eye witness to the accident, Gary B. Phillips, testified that he was driving behind the GMC truck hauling steel on the morning of the accident. He had been following the truck for about twenty miles. The truck was headed straight northbound on Route 19. He observed that the rear emergency flasher lights of the truck were flashing prior to the accident. He also observed the Marling vehicle with the left blinker blinking. He stated that “...the left blinker was blinking on the front of the car, like they were going to make a left hand turn. And I expected the car to stop, you know, because-I mean the truck was right there. But the car
didn’t stop. It just turned across into the path of the truck.” He saw the truck hit the car broadside.
Luther James Dempsey, Jr., a civil engineer, testified as an expert witness on behalf of the claimants. He stated that had reviewed the history of the Irish Corner intersection where the accident occurred. He examined the average daily traffic records maintained by the respondent and these revealed that the traffic had increased from an average of 3,000 vehicles daily in 1973 to an average of 10,500 vehicles daily in 1986. He also reviewed the available traffic accident reports for 1980 through 1987 for accidents which had occurred at this intersection. He determined that 59 out of 70 reports involved accidents at the Irish Corner intersection which he contends could have been prevented if proper traffic signals had been installed at the intersection by the respondent. He also referred to section 4C-1 of the Manual of Uniform Traffic Control Devices (MUTD) which states as follows:
§4C-1 Comprehensive investigation of traffic conditions and physical characteristics of the location is required to determine the necessity for signal installation and operation of a signal that is *208 found to be warranted.
The Manual then refers to nine different areas where numbers and conditions are applied to determine if a signal is warranted or if further study is needed to determine if a signal is warranted in the location. He is of the opinion that his review of the plans and specifications for this highway, the plans for the future, the average traffic counts, and the number of traffic accidents at the intersection establishes that respondent knew or under reasonable care should have known that some type of traffic signal device or warning was justified at the Irish Corner intersection prior to December 7, 1987, the date of claimants’ accident. He stated that the data as of the early 1980s warranted or “justified the installation or the further study to determine the best system to work at that intersection. ” He did not have an opinion as to what kind of traffic control device at the intersection would have prevented or cut down the likelihood of this accident.
The issues for the Court are whether respondent was negligent in failing to install traffic signal devices at the Irish Corner intersection and whether such a device would have prevented this accident. The Court is not convinced that respondent was negligent in failing to install a traffic device at the Irish Corner intersection or that such a device would have prevented this accident. It is uncontroverted that the driver of the Datsun in which the claimants were guest passengers was at fault in this accident. The investigating officer, Lieutenant Curtis Persinger of the Summersville Police Department, noted in the accident report that the contributing circumstance to the accident was turning improperly and this was based upon statements of witnesses at the scene who indicated that Mrs. Marling made a left turn in front of on-coming traffic. The accident report further indicated no improper driving on the part of the operator of the truck. Although the weather may have been overcast on the day of the accident, visibility on the part of the driver of the car should not have been a contributing factor. The testimony of the other witnesses does not include the mention of any fog problems that morning. The Court is also of the opinion that the evidence establishes that the GMC truck had its emergency flashing lights operating properly as it approached the Irish Corner intersection.
Although the Manual of Uniform Traffic Control Devices provides standards for respondent to follow to determine the necessity for traffic devices, the Manual also states that such standards “are not a substitute for engineering judgment.” For the Court to hold that a traffic signal at that intersection would have prevented this accident would require this Court to substitute its judgment for that of respondent’s engineers, and, further, would require extensive speculation on the part of the Court. This Court does resort to speculation to justify a finding of negligence on the part of the respondent. The Court has concluded that the proximate cause of the accident herein was the improper driving of the operator of the car in which the claimants were passengers; that the respondent was not negligent in failing to have traffic devices or controls at this intersection; and that it would be speculative for the Court to assume that any traffic device at the intersection would have prevented this tragic accident.
Accordingly, the Court is of the opinion to and does deny this claim.
*209 Claims disallowed.